UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RUDOLPH BETANCOURT

        Plaintiff,                                Case No. 1:21-cv-10436

v.                                               Honorable Thomas L. Ludington
                                                     United States District Judge

INDIAN HILLS PLAZA LLC.,

        Defendant.
_____/

**OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR CONTEMPT AND CLOSING CASE**

Plaintiff Rudolph Betancourt filed a motion seeking to hold Defendant Indian Hills Plaza—a business plaza in Mount Pleasant, Michigan—in contempt of this Court's orders directing Defendant to remediate 17 confirmed violations of the Americans with Disabilities Act by the extended deadline of September 30, 2023. Although the ADA violations were not fully remediated until, at the latest, November 27, 2023, Defendant diligently attempted to comply with this Court's orders and took reasonable steps to remediate. Accordingly, Plaintiff's Motion for Contempt will be denied. Further, the case will be closed as this Court is satisfied all ADA violations on Defendant's property have been sufficiently remediated.

I.

On February 25, 2021, Plaintiff Rudolph Betancourt filed a complaint alleging that, while shopping at Defendant Indian Hills Plaza[1] in Mount Pleasant, Michigan, he encountered 28 violations of the Americans with Disabilities Act (ADA), 42 U.S.C. § 1202 *et seq*., (Count I) and

---

[1] Defendant is a business plaza that includes, among other businesses, Dick's Sporting Goods, Big Lots, T.J. Maxx, Dollar Tree, Joann Fabrics, Five Below, Sumo Sushi, First Wok, Game Stop, and PetSmart. ECF Nos. 18 at PageID.65; 64 at PageID.1114; 64-3 at PageID.1222, 1231.

Michigan's Persons with Disabilities Civil Rights Act (MPDCRA), MICH. COMP. LAWS § 37.1101 *et seq.*, (Count II). ECF No. 1.

On March 4, 2022, this Court granted Plaintiff's Motion for Partial Summary Judgment, finding that Defendant committed the following 17 violations of the ADA as confirmed by Defendant's own expert:

1. Defendant's curb ramps contained changes in level exceeding 1/4 inch, in violation of Section 303.2 of the 2010 ADA Standards. ECF No. 1, ¶ 12(a); *see also* ECF No. 23 at PageID.382.

2. Defendant's curb ramps "have flares with slopes" that exceeded 10%, in violation of Section 406.3 of the 2010 ADA Standards. ECF No. 1, ¶ 12(b); *see also* ECF No. 23 at PageID.382.

3. Defendant's walkways had running slopes exceeding 5% without any handrails, in violation of Section 403.3 of the 2010 ADA Standards. ECF No. 1, ¶ 12(c); *see also* ECF No. 23 at PageID.383.

4. The accessible route connecting the accessible parking area to the accessible walkway at Defendant's property contained vertical level changes in excess of 1/4 inch, in violation of Sections 303.2 and 206.2.2 of the 2010 ADA Standards. ECF No. 1, ¶ 12(e); *see also* ECF No. 23 at PageID.383.

5. The parking stalls and access aisles on Defendant's property contained cross slopes in excess of 2%, in violation of Section 502.4 of the 2010 ADA Standards. ECF No. 1, ¶ 12(f); *see also* ECF No. 23 at PageID.383.

6. The parking stalls and access aisles on Defendant's property contained vertical changes in level greater than 1/4 inch, in violation of Section 303.2 of the 2010 ADA Standards. ECF No. 1, ¶ 12(g); *see also* ECF No. 23 at PageID.384.

7. The parking stalls and access aisles on Defendant's property had dilapidated and poorly maintained "markings and stipings," in violation of 28 C.F.R. § 36.211(a) ECF No. 1, ¶ 12(h); *see also* ECF No. 23 at PageID.384.

8. The door at Dollar Tree did not open 90° nor extended the width of the doorway, in violation of Section 404.2.4 of the 2010 ADA Standards. ECF No. 1, ¶ 12(j); *see also* ECF No. 23 at PageID.384.

9. There was a 5/8 inch vertical change of level where the parking lot pavement on Defendant's property met the accessible walkway, in violation of Section 303.2 of the 2010 ADA Standards. ECF No. 1, ¶ 12(k); *see also* ECF No. 23 at PageID.384.

10. The gripping surface of the rear-wall grab bar in the Dollar Tree's men's restroom was obstructed, in violation of Section 609.3 of the 2010 ADA Standards. ECF No. 1, ¶ 12(p); *see also* ECF No. 23 at PageID.384.

11. The interior accessible routes at Big Lots did not provide 36 inches of clear width for the walking surfaces in the retail aisles for furniture, in violation of Section 403.5.1 of the 2010 ADA Standards. ECF No. 1, ¶ 12(s); *see also* ECF No. 23 at PageID.385.

12. The restroom-stall door in the Big Lots men's restroom was not self-closing, in violation of Section 604.8.1.2 of the 2010 ADA Standards. ECF No. 1, ¶ 12(t); *see also* ECF No. 23 at PageID.385.

13. There was no U-pull on the outside or inside of the restroom-stall door in the Big Lots men's restroom, in violation of Section 604.8.1.2 of the 2010 ADA Standards. ECF No. 1, ¶ 12(u); *see also* ECF No. 23 at PageID.385.

14. The Big Lots men's restroom had an exposed lavatory drain pipe and water lines, in violation of Section 606.5 of the 2010 ADA Standards. ECF No. 1, ¶ 12(w); *see also* ECF No. 23 at PageID.385.

15. The accessible stall in the Big Lots men's restroom had a flush control on the closed side of the water closet, in violation of Section 604.6 of the 2010 ADA Standards. ECF No. 1, ¶ 12(y); *see also* ECF No. 23 at PageID.386.

16. The sidewall grab bar in the accessible stall of the Big Lots men's restroom did not extend at least 54 inches from the rear wall, in violation of Section 604.5.1 of the 2010 ADA Standards. ECF No. 1, ¶ 12(z); *see also* ECF No. 23 at PageID.386.

17. The accessible features of Defendant's facility were not maintained, in violation of 28 C.F.R. § 36.211(a). ECF No. 1, ¶ 12(bb); *see also* ECF No. 23 at PageID.386.

But final judgement was not entered as to these 17 ADA violations. Given the difficulty of securing permits and contractors necessary to remediate these violations presented by the COVID-19 pandemic, this Court stayed the case. *Id.* at PageID.388. During the stay, Plaintiff voluntarily dismissed the remaining 11 ADA claims and the MPDCRA claims. ECF No. 31.

The stay was lifted 276 days later on December 5, 2022. *See Betancourt v. Indian Hills Plaza LLC*, No. 1:21-CV-10436, 2022 WL 3234391 (E.D. Mich. July 18, 2022) (staying case until December 5, 2022), *recons. denied*, No. 1:21-CV-10436, 2022 WL 3568986 (E.D. Mich. Aug. 18,

2022). One week after the stay was lifted, Plaintiff filed a motion for final judgment under Civil Rule 54(b) and attorney's fees under 42 U.S.C. § 12205. ECF No. 38. Plaintiff also filed a second motion for attorney's fees and a motion for sanctions against the Defendant. ECF No. 43.

On March 7, 2023, this Court denied Plaintiff's motion for sanctions and issued a final Judgment against Defendant as to the 17 ADA violations, awarding Plaintiff $12,000 in attorney's fees and costs,[2] and directing Defendant to fully remediate the 17 ADA violations by August 30, 2023. ECF No. 47 at PageID.908. This Court did not close the case, though, and retained jurisdiction to ensure Defendant fully remediated. *Id.*

On August 24, 2023, six days before full remediation was due, Defendant filed a Motion to Extend the Deadline to Remediate from August 30 to September 30, 2023. ECF No. 51. Defendant grouped the 17 ADA violations into three categories—Dollar Tree Interior Violations, Big Lots Interior Violations, and Exterior Violations. *Id.* at PageID.917. Defendant claimed (1) all Interior Violations were fully remediated;[3] (2) it hired Black Jack Asphalt & Concrete (Black Jack) to remediate the Exterior Violations; (3) Black Jack's work would begin on August 29, 2023—one day before full remediation was due; and (4) all violations would be fully remediated "no later than September 30, 2023." *Id.* at PageID.917–20.

---

[2] Plaintiff appealed this award, ECF No. 49, but the Sixth Circuit Court of Appeals affirmed this Court's $12,000 award. *Betancourt v. Indian Hills Plaza LLC*, 87 F.4th 828, 831-33 (6th Cir. 2023); *see also* ECF Nos. 49; 50.

[3] At the time, there was some dispute between the Parties as to what specific violations were fully remediated. Defendant claimed eight of the 17 violations were fully remediated and that the nine unremediated violations were outlined in paragraphs 12(a), (b), (c), (e), (f), (g), (h), (k), and (bb) of Plaintiff's Complaint. ECF No. 51 at PageID.817–18; *see also* ECF No. 1. Plaintiff , however, claimed only six of the 17 violations were fully remediated—and argued these were the most "minor" violations to remediate. ECF No. 52 at PageID.1052. However, the Parties seemingly agreed that only the Exterior violations remained to be fully remediated. *Compare* ECF No. 51 at PageID.918–19 *with* ECF No. 52 at PageID.1052 ("Defendant had still noy yet begun any remediation of the 11 ADA substantial violations on the exterior of the Defendant's property.").

Plaintiff responded that he had no objections to the extension if Defendant had been diligent in its prior remediation efforts, but would object otherwise. ECF No. 52 at PageID.1053. Plaintiff attached emails in which Plaintiff's Counsel inquired about when Defendant hired Black Jack and why Defendant was delayed in starting work. ECF No. 52-1 at PageID.1056. Defense Counsel replied that Defendant was in discussions with "several contractors" to perform the remediations "for months" but recently "shifted gears" to Black Jack. *Id.* at PageID.1055.

Accordingly, on September 5, 2023, this Court directed Defendant to file supplemental briefing detailing "its efforts to hire contractors, including Black Jack, to remediate" the Exterior Violations, "including all relevant dates." ECF No. 53. at PageID.1059. This Court reiterated that this case has been pending for over two years and Defendants have known of their need to remediate 17 ADA violations since March 4, 2022. *Id.* at PageID.1058.

Defendant explained in its supplemental briefing that its delay in remediating the Exterior Violations was caused by factors "outside of [Defendant]'s control" such as "exceedingly high initial quotes from contractors" and unanticipated local zoning requirements. ECF No. 54 at PageID.1060–62. To show their diligence despite the delays, Defendant attached emails in which it instructed third parties and staff to expedite efforts. ECF No. 54-2 at PageID.1072–73 (Defendant noting the violations "need[ed] to be addressed by August 30, 2023" and instructing staff to "IMMEDIATELY" bid out with other vendors). Defendant claimed it received Black Jack's first estimate on June 7, 2023 but proceeded to "revamp the scope of the project to accommodate all the requirements of the Court's judgement as efficiently as possible." *Id.* at PageID.1063–64. After this "revamp," Defendant received Black Jack's second proposal on August 17, 2023 but this proposal "failed to consider a few key items[.]" *Id.* at PageID.1064. Given these failures, Defendant received a third Black Jack proposal on September 5, 2023 and

accepted it on September 7, 2023—one week after full remediation was originally due and two weeks after Defendant filed its Motion to Extend. *See id.*

On September 25, 2023, after Plaintiff responded, ECF Nos. 55, this Court granted Defendant's motion and extended the remediation deadline to September 30, 2023—the date Defendant insisted full remediation would be complete, *see* ECF No. 51 at PageID.917. ECF No. 57 at PageID.1100. This Court stressed "if Defendant [did] not fully remediate all ADA violations by" September 30, 2023, "Defendant may be held in contempt of this Court's March 2023 Order, ECF No. 47, and may be subject to sanctions." *Id.*

On September 30, 2023, the violations were not yet fully remediated. Accordingly, on October 6, 2023, Plaintiff filed a motion seeking to hold Defendant in civil contempt and sanction Defendant in the form of awarding Plaintiff attorney's fees, costs, and damages. ECF No. 58. Plaintiff attached additional emails between the Parties. On October 2, 2023, Plaintiff's Counsel emailed Defense Counsel asking whether remediation was complete and, if so, requested confirming photographs. ECF No. 58-1 at PageID.1106. Defense Counsel did not reply so Plaintiff's Counsel sent a follow up email on October 4, 2023. ECF No. 58-1 at PageID.1105. The next day, Defense Counsel replied:

> We've received your inquiry and appreciate your patience while [Defendant] remediates the property. It is my understanding issues arose during critical path construction that caused some delays, which is why we previously indicated to the Court remediation might extend beyond September 30. [Defendant] intends to complete remediation in a business like manner and will be providing an update to the Court at the appropriate time.

*Id.*

Defendant's update came two weeks later—20 days after the extended September 30, 2023 remediation deadline—in the form of a response to Plaintiff's Motion for Contempt. ECF No. 59. Defendant "admit[s] [it] should have requested an extension greater than 30 days," and explained

that additional unanticipated issues caused further delay including: (1) concrete throughout Defendant's property did not have frost slabs, as required by the Michigan Building Code; (2) concrete on Defendant's property was unexpectedly thick, requiring additional time to cut; (3) rain; and (4) lack of sufficient concrete supply. *Id.* at PageID.1113-14, 1116, 1120. *See also* ECF Nos. 59-1 (discussing delays); 59-2 at PageID.1136; 59-4; 59-5 at PageID.1147.

Defendant also detailed its remediation efforts and Black Jack's work as follows: On September 14, 2023, Black Jack began its remediation work on Defendant's property. *Id.* at PageID.1113. Black Jack began cutting concrete four days later. *Id.* at PageID.1113–14. On September 19, 2023, Defendant began paying the PEA Group[4]—the Engineer of Record—$1,500 per week to provide weekly inspections and compliance progress and reports. *Id*. By October 4, 2023—four days after the extended remediation deadline—Defendant estimated that all Exterior Violations were 50% remediated, that concrete work would be completed by October 31, 2023, and that the parking lots on Defendant's property would be fully remediated by November 3, 2023. *Id.* at PageID.1115; *see also* ECF No. 59-7. On October 11, 2023, a PEA Group engineer inspected Defendant's property and determined that "more asphalt was needed in certain areas" to ensure ADA-compliant slopes. ECF Nos. 59 at PageID.1115; 59-2 at PageID.1136. And despite rainy weather on and around October 13, 2023 which delayed Black Jack's plans to cut concrete, Defendant maintained remediation would be fully completed by October 31, 2023 "subject to weather." *Id.*

---

[4] The PEA Group is an engineering consulting firm with locations throughout Michigan and Texas which provides, among other services, ADA compliance consulting. *See ADA Consulting,* PEA GROUP, https://peagroup.com/what-we-do/services/ada-consulting/ (last visited Jan. 4, 2024) [https://perma.cc/PE5W-QH9A].

Plaintiff replied on October 23, 2023. ECF No. 60. Five weeks later, on November 28, 2023, Defendant filed a Supplemental Brief informing this Court that all ADA violations on Defendant's property were "100%" remediated. ECF No. 61 at PageID.1175. Defendant attached a November 27, 2023 PEA Group Report which stated:

> As requested, PEA Group, as the Engineer of Record for the project, performed a site observation of the accessibility repair project at [Defendant's property] in Mt. Pleasant, Michigan. In our professional opinion the required exterior ADA upgrades are complete and in compliance with the Federal ADA guidelines, Michigan Building Code, local municipal ordinances, the Plaintiff's ADA Complaint and related . . .Site Review Report dated November 3, 2021.

ECF No.61-1.

Plaintiff responded that this "one page 'opinion letter' from the Defendant's project manager is not sufficient confirmation that the Defendant's property is ADA complaint" and requested an inspection of the property at Defendant's expense. ECF No. 62 at PageID.1179. And even if the Defendant's property is ADA complaint, Plaintiff maintained, Defendant should still be held in contempt and subject to sanctions because remediation was not completed in a timely manner. *Id.* at PageID.1180.

Defendant replied by providing additional evidence of its remediation efforts including a November 14, 2023 PEA Group Report which confirmed that all slopes on Defendant's property complied with the ADA. *See* ECF No. 64-1. Defendant further attached 124 photographs corroborating its remediation efforts and completion claims. *See* ECF Nos. 64-1; 64-2; 64-3. Accordingly, Defendant requested this Court to deny Plaintiff's Motion for Contempt, ECF No. 58, and close the case. ECF No. 64 at PageID.1191.

## II.

The purpose of civil contempt is both coercive and compensatory. Civil contempt orders can coerce parties to comply with court orders and can compensate aggrieved parties for an

opposing party's noncompliance. *Glover v. Johnson*, 199 F.3d 310, 313 (6th Cir. 1999); *United States v. Bayshore Assocs., Inc.*, 934 F.2d 1391, 1400 (6th Cir. 1991); *Int'l Union, Sec., Police & Fire Pros. of Am. (SPFPA) v. Maritas*, No. 13-CV-11734, 2014 WL 12660123, at *5 (E.D. Mich. Jan. 16, 2014). "A decision on a contempt petition is within the sound discretion of the trial court and thus is reviewed [on appeal] only for abuse of discretion." *Id.* at 378; *see also Capwill*, 462 F.3d at 550 (noting the Sixth Circuit Court of Appeals will "reverse only if it is left with a firm and definite conviction that a mistake has been made" and or if the district court's decision rested on clearly erroneous factual findings or the incorrect application of legal standards). Indeed, the Supreme Court has stressed that civil contempt is a "severe remedy" which "should not be resorted to where there is a fair ground of doubt as to the wrongfulness of the defendant's conduct." *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1802, 204 L. Ed. 2d 129 (2019) (internal citations and emphasis omitted).

The party moving to hold another in contempt has the burden of proving, by clear and convincing evidence, that the opposing party "violated a definite and specific order of the court requiring him [or her] to perform or refrain from performing a particular act or acts with knowledge of the court's order." *Elec. Workers Pension Tr. Fund of Loc. Union 58, IBEW v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 379 (6th Cir. 2003). It is well established that this "clear and convincing" civil contempt standard is "not a light burden" and requires something more than preponderance of the evidence. *Id.*; *Cernelle v. Graminex, L.L.C.*, 437 F. Supp. 3d 574, 600 (E.D. Mich. 2020), *amended on reconsideration in part*, 539 F. Supp. 3d 728 (E.D. Mich. 2021), *aff'd*, No. 21-1579, 2022 WL 2759867 (6th Cir. July 14, 2022), *and aff'd*, No. 21-1579, 2022 WL 2759867 (6th Cir. July 14, 2022).

More clearly, to justify a finding of civil contempt, the movant must show (1) that a prior order "clearly and unambiguously imposed an obligation on the opposing party;" (2) clear and convincing evidence of the opposing party's noncompliance; and (3) the opposing party did not diligently attempt to comply with the order. *Maritas*, 2014 WL 12660123, at *5; *see also McAlpin v. Lexington 76 Auto Truck Stop, Inc.*, 229 F.3d 491, 504 (6th Cir. 2000). As to the first prong, all ambiguities are resolved in favor of the party charged with contempt. *Lowrey v. Beztak Properties*, No. 06-13408, 2009 WL 189967, at *4 (E.D. Mich. Jan. 27, 2009). As to the third prong, federal courts "consider whether the defendant 'took all reasonable steps . . . to comply with the court's order.'" *Gary's Elec. Serv. Co.*, 340 F.3d at 379 (quoting *Peppers v. Barry*, 873 F.2d 967, 969 (6th Cir. 1989)).

### III.

Plaintiffs have not met their burden and the record suggests, despite delays, Defendant was diligent in its efforts to comply with this Court's orders to fully remediate all ADA violations. So, Plaintiff's Motion will be denied and Defendant will not be held in contempt.

As a threshold matter, Defendant concedes that the first two prongs of the civil contempt standard are satisfied, here. ECF No. 59 at PageID.1118 (Defendant "does not contest that this Court clearly and unambiguously imposed an obligation on it to complete remediation on or before September 30, 2023, or that the final phase of remediation was not complete as of that date."). Defendant only argues it has *diligently attempted* to remediate the ADA violations in compliance with this Court's Orders. *Id.* Notably, Plaintiff does not discuss Defendant's remediation efforts whatsoever throughout his two-page Motion for Contempt, two-page Reply in Support, or two-page Response to Defendant's Supplemental Brief. *See generally*, ECF Nos. 58; 60; 62. But the record before this Court suggests Defendant's diligence.

In this Court's Order which extended the remediation deadline to September 30, 2023, this Court found good cause to extend the deadline precisely because Defendant had shown—in response to Plaintiff's inquiry—diligent efforts to remediate and delay beyond Defendant's control. *See* ECF No. 57 at PageID.1099 (discussing how Defendant's delay was attributable to exceedingly high contractor quotes, third party proposals which did not fully consider the ordered remediations, and unanticipated zoning requirements). And Defendant has detailed its diligence since September 2023, too.

Defendant claims Black Jack began its remediation work on September 14, 2023, and began physically cutting concrete four days later. ECF Nos. 59 at PageID.1113–14; 59-2 at PageID.1137. On September 19, Defendant claims it began paying the PEA Group $1,500 per week to visit the site, evaluate the remediation, and provide progress reports. ECF No. 19 at PageID.1114. Defendant claims that, by September 29, all slopes at PetSmart and Joann Fabrics, two tenants on Defendant's property, were ADA compliant. *See* ECF No. 59-2 at PageID.1137. By October 6, Defendant estimated that all work was over 50% complete. ECF No. 59 at PageID.1115. On October 10, Defendant claims it instructed Black Jack to simultaneously work on concrete and asphalt to expedite full remediation. ECF Nos. 59 at PageID.1115; 59-2 at PageID.1138. By October 11, Defendant claims all exterior slopes in front of and surrounding five different tenants on Defendant's property were ADA complaint. *See* ECF No. 59 at PageID.1114–15. Importantly, Defendant provided well over one hundred photographs and numerous PEA Group Reports illustrating its remediation efforts and corroborating its remediation-completeness claims.[5] *See generally* ECF Nos. 59-1; 59-3; 59-5; 59-6; 59-7; 59-8; 61-1; 64-1; 64-2; 64-3. Indeed,

---

[5] Notably, all PEA Group Constriction Observation Reports provided by Defendant indicate Black Jack crew members worked from 7:00 AM to 4:00 PM. ECF Nos. 59-5; 59-8; 64-1.

the PEA Group verified on November 14 that all slopes on Defendant's property were ADA compliant, ECF No. 64-1 at PageID.1194, and verified on November 27 that all ADA Exterior Violations were fully remediated. ECF No. 61-1

True, Defendant did not achieve full remediation by the September 30, 2023 deadline. Defendant concedes that remediation was not complete until nearly two months after this extended deadline. ECF Nos. 59 at 61-1 at PageID.1178. But the record suggests this delay was largely attributable to third parties and factors outside Defendant's control, and Plaintiff has not shown otherwise. *See* ECF No. 59-1 at PageID.1123–25 (detailing weeks of delay attributable to (1) bringing Defendant's property in compliance with the Michigan Building Code by installing unanticipated frost slabs; (2) rain; (3) limited concrete supply; (4) the condition of Defendant's tenant's businesses; and (5) complying with unanticipated zoning requirements); *see also* ECF Nos. 59 at PageID.1114; 59-4 (attributing delay to (6) cutting concrete that was four-to-six inches thicker than expected).

In sum, although Defendant did not fully remediate the confirmed ADA violations by the extended September 30, 2023 deadline, Defendant diligently attempted to do so. *See Nabkey v. Hoffius,* 827 F. Supp. 450, 452 (W.D. Mich. 1993*), aff'd sub nom. Nabkey v. 61st Dist. Ct.*, 79 F.3d 1148 (6th Cir. 1996). The record suggests that Defendant took reasonable steps to ensure timely remediation but that third parties and circumstances not within Defendant's control caused delay. To be sure, the prolonged nature of this case and efforts to remediate the confirmed ADA violations—due in part to the COVID-19 pandemic—is not lost on this Court. But, given Defendant's diligence and the now-complete remediation, this Court will not resort to the "severe remedy" of civil contempt and Plaintiff's Motion will be denied. *See Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801 (2019).

Further, this Court is satisfied that all 17 confirmed ADA violations, ECF No. 48, have been fully remediated. *See, e.g.*, ECF Nos. 51 at PageID.923–73 (photos confirming remediation of Dollar Tree interior violations). 974–83 (photos confirming remediation of Big Lots interior violations); 64-1 (PEA Group November 14 Observation Report and photos confirming ADA complaint slopes); 61-2 (PEA Group November 27 report and photos confirming full remediation); 64-3 (confirming photos). So, this case will be closed.

### IV.

Accordingly, it is **ORDERED** that Plaintiff's Motion for Contempt, ECF No. 58, is **DENIED.**

**This order closes the above-captioned case.**

Dated: January 9, 2024                          s/Thomas L. Ludington
                                                THOMAS L. LUDINGTON
                                                United States District Judge